# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KEITH W. BRADFORD, | ) |
|                Petitioner, | ) CASE NO. 5:07-CV-01915 <br> ) <br> ) JUDGE JOHN R. ADAMS |
|        v. | ) <br> ) MAGISTRATE JUDGE GREG WHITE |
| DEBORAH TIMMERMAN-COOPER, Warden | ) <br> ) **REPORT & RECOMMENDATION** |
|                Respondent. | ) |

Petitioner Keith W. Bradford ("Bradford"), challenges the constitutionality of his conviction in the case of *State v. Bradford*, Summit County Case No. CR-04-08-2577. Bradford, represented by counsel Sarah M. Schregardus, filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on June 27, 2007 with the United States District Court for the Northern District of Ohio. Respondent Deborah Timmerman-Cooper ("Respondent") filed her Answer/Return of Writ on October 10, 2007. Bradford filed his Traverse on December 13, 2007. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Bradford's petition (Doc. No. 1) be DENIED.

## I. Procedural History

**A.     Conviction**

On August 9, 2004, The Summit County Grand Jury returned an indictment charging Bradford with one count of felonious assault in violation of Ohio Revised Code ("O.R.C.") § 2903.11(A)(1), a felony of the second degree, and one count of domestic violence in violation of O.R.C. § 2919.25(A), a felony of the third degree.  (Doc. 9-2, Exh. 1.)

Bradford pled not guilty to the charges in the indictment.  (Doc. No. 9-2, Exh. 2.)  A jury trial commenced on October 12, 2004.  Bradford, represented by attorney Alex Morton, was found guilty as charged.  (Doc. No. 9-2, Exh. 3.)  On November 18, 2004, Bradford was sentenced to six years incarceration on the felonious assault and two years incarceration for domestic violence.  (Doc. No. 9-2, Exh. 4.)  The two sentences were ordered to be served concurrently.  *Id*.

**B.     Direct Appeal**

On December 9, 2004, Bradford, represented by attorney Nathan A. Ray, filed a timely notice of appeal with the Ninth District Court of Appeals ("state appellate court").  (Doc. No. 9-2, Exh. 5.)  On November 2, 2005, the state appellate court affirmed the judgment of the trial court.  (Doc. No. 9-2, Exh. 8.)  On December 19, 2005, Bradford filed a notice of appeal with the Ohio Supreme Court.  (Doc. No. 9-2, Exh. 9.)  On March 29, 2006, the Ohio Supreme Court dismissed Bradford's appeal as not involving any substantial constitutional question.  (Doc. No. 9-2, Exh. 12.)

**C.     Federal Habeas Petition**

On June 27, 2007, Bradford filed a Petition for Writ of Habeas Corpus.  His sole ground

2

for relief is as follows:

> GROUND ONE: A defendant is denied the effective assistance of counsel when counsel fails to make any meaningful objections and allows the admission of prejudicial evidence that should have been excluded.

(Doc. No. 1.)

## II. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court's finding and discussion of the relevant facts is as follows:

> With respect to both convictions, Appellant has alleged that the State failed to establish that Appellant did in fact cause harm to Michelle. The State has countered that the credible testimony of medical personnel and police officers, coupled with photographic evidence established, and the jury believed, that Appellant had assaulted Michelle. Therefore, the State argues that this Court must defer to the jury's judgment.
>
> With respect to the felonious assault conviction, Appellant has alleged that the State failed to establish the "serious physical harm" element of the crime. The State has responded that Ohio case law has long recognized that unconsciousness constitutes "serious physical harm" under the statute. The record reflects that Michelle lost consciousness, thus enabling the jury to conclude that the "serious physical harm" element had been established.
>
> We recognize that the parties are in dispute regarding the pertinent factual issue of whether Michelle tripped or was assaulted by Appellant. The testimony adduced at trial showed that on August 1, 2004 Michelle lost consciousness in her home and was brought to the Akron General emergency room where she was treated for a hemotoma to the forehead, bruises and abdominal pain. The record further reflects that in the course of her treatment, Michelle told emergency room employees that her boyfriend had assaulted her. The testimony of two Akron Police Department officers noted swelling and streaking red marks on Michelle's forehead consistent with the imprint of a fist. Photographic evidence of Michelle's injuries was also introduced into evidence. Furthermore, the testimony of Dr. David Peter, Michelle's attending physician, indicated that her

injuries and symptoms were inconsistent with a fall from standing height.

During the course of her testimony, Michelle denied accusing Appellant of assaulting her and stated that she had tripped over a cable cord and hit her head on the counter. The testimony of Carl Massey, a neighbor of the couple, indicated that while he and the Appellant were outside having a yard sale, a disturbance occurred in the apartment, that Appellant went upstairs to check on Michelle, and that approximately three minutes later, Appellant shouted down to Carl to wait for the paramedics. The testimony of Bill Lower of the Akron Fire Department Emergency Medical Services, coupled with photographic evidence intimated that the inside of the apartment was cluttered and difficult to navigate.

*\*\*\**

Appellant contends that defense counsel's failure to object resulted in ineffective assistance of counsel. However, this Court has consistently held that "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." *State v. Taylor*, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶76. In the instant case, we view defense counsel's failure to object as a tactical decision, inasmuch that objecting would only serve to highlight negative testimony or run counter to defense counsel's theory of the case. Furthermore, Appellant has not established such failure to object was not sound trial strategy.

Appellant has also argued that defense counsel's failure to request a limiting instruction concerning the State's impeachment of its own witness equated to ineffective assistance of counsel. This argument is not well taken. This Court has held that "the decision not to request a limiting instruction is a matter of trial strategy and does not establish ineffective assistance of counsel." *State v. Fields* (Aug. 9, 2000), 9th Dist. No. 99CA0062, 2000 Ohio App. LEXIS 3571, at *10.

After careful review of the record, we conclude that Appellant has failed to meet his burden of establishing lack of competent counsel and prejudice stemming from counsel's ineffectiveness. Appellant has not surmounted the presumption that defense counsel's actions might be "sound trial strategy." *Strickland*, 466 U.S. at 689. We find that the errors put forth by Appellant were tactical decisions within the parameters of the law. Accordingly, Appellant's third assignment of error is without merit.

*State v. Bradford*, 2005-Ohio-5804, 2005 Ohio App. LEXIS 5234 (Ohio Ct. App. 2005).

### III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

4

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its

5

independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

**A.     Ground One: Ineffective Assistance of Trial Counsel**

Bradford argues that his trial counsel was ineffective because he failed to: (1) object to the prosecution attacking the credibility of its own witness, the victim, with prior inconsistent statements; (2) object to the hearsay testimony provided by numerous witnesses; (3) object to the introduction of Bradford's prior criminal record; and (4) request a limiting instruction. (Doc. No. 13.) Specifically, Bradford contends that his trial counsel should have objected to the testimony proffered by various medical and law enforcement personnel relating to statements made to them by the victim. *Id.* In addition, Bradford claims that his trial counsel was ineffective for failing to request a limiting instruction that would have cautioned the jury that the victim's prior inconsistent statements were only to be considered for impeachment purposes and not as substantive evidence. *Id.*

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). A petitioner also must demonstrate that a trial counsel's performance prejudiced the

petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The state appellate court applied the *Strickland* test and found that a "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." *Bradford*, 2005-Ohio-5804 ¶¶27-29 (citations omitted). The state appellate court explained that it "view[ed] defense counsel's failure to object as a tactical decision, inasmuch that objecting would only serve to highlight negative testimony or run counter to defense counsel's theory of the case [and that Bradford] has not established such failure to object was not sound trial strategy." *Id*. The state appellate court further found that defense counsel's failure to request a limiting instruction concerning the State's impeachment of its own witness was also a matter of trial strategy. *Id*. As such, Bradford's claim of ineffective

7

assistance of trial counsel was found to be lacking in merit.

Bradford argues that the state appellate court, by dismissing all of trial counsel's alleged failures as trial strategy, applied federal law unreasonably under *Strickland v. Washington*.  He argues that his counsel's conduct was "so outside the realm of legitimate trial strategy as to make ordinary counsel 'scoff' at the hearing of it."  (Doc. No. 13 at 13), *citing State v. Yarber*, 102 Ohio App.3d 185, 187, 656 N.E.2d 1322 (Ohio Ct. App. 1995).

Bradford's sole reliance on a state court decision is misplaced.  Nevertheless, "[b]oth the Ohio courts and [the Sixth] Circuit have previously held that the failure to request a limiting instruction with regard to some important piece of evidence can constitute constitutionally ineffective assistance of counsel if the failure falls outside of an objective standard of professionally reasonable conduct." *Mackey v. Russell*, 148 Fed. Appx. 355, 365-366 (6th Cir. 2005), *citing White v. McAninch*, 235 F.3d 988, 998 (6th Cir. 2000) (finding that counsel was ineffective where "no reasonably competent attorney would have adopted [trial counsel]'s strategy"); *State v. Lascola*, 61 Ohio App. 3d 228, 238-39, 572 N.E.2d 717 (Ohio Ct. App. 1988).  Other cases from this Circuit have also found that a trial counsel's failure to object is not necessarily shielded simply because it is part of counsel's strategy.  *See, e.g., James v. United States*, 217 Fed. Appx. 431, 436 (6th Cir. 2007); *Coleman v. Ohio Adult Parole Auth.*, 118 F. App'x 949, 952 (6th Cir. 2004); *Lovett v. Foltz*, 884 F.2d 579 (6th Cir. 1989).

Although, in hindsight, trial counsel may have better served his client by objecting to the introduction of the victim's inconsistent out-of-court statements, his failure to do so was not an unreasonable trial strategy and, therefore, his performance did not amount to ineffective assistance of counsel.  Bradford's argument – that the victim's out-of-court statements were

improperly admitted under Ohio Evid. R. 607, which conditionally prohibits a party from impeaching its own witness – ignores the probability that the victim's statements were admissible through hearsay exceptions under Ohio Evid. R. 803.

In his Traverse, Bradford acknowledged that some of the victim's statements may have been admissible under the Ohio Evid. R. 803(4) so long as they were statements for the purposes of medical diagnosis or treatment. (Doc. No. 13 at 11-12.) However, Bradford argues that the victim's statements indicating that she was beaten and identifying her boyfriend as her assailant are unrelated to treatment or diagnosis. *Id*. Bradford relies on a state appellate court ruling wherein the court held that a rape victim's statement to the doctor that there were two men involved and that they threatened her life was not properly admissible under Ohio Evid. R. 803(4). *See State v. Clary*, 596 N.E.2d 554, 558-60, 73 Ohio App.3d 42 (Ohio Ct. App. 1991). The *Clary* court, however, observed that "the inception or general character of the cause or external source [of an injury] insofar as reasonably pertinent to diagnosis or treatment" is admissible, but not the manner in which an injury or accident happened. *Id*. In fact, the *Clary* court did not find that the victim's statement that she was raped was impermissible, but only the other circumstances of the attack because they were not reasonably pertinent to treatment. *Id*. Thus, it is probable that the victim's statement that she sustained her injuries at the hands of another person, rather than from a trip and fall, was reasonably pertinent to her diagnosis even if her identification of her boyfriend as the culprit was not.

Nevertheless, some, if perhaps not all, of the victim's statements explaining how she suffered her injuries may have been admissible, even in spite of trial counsel's objections, as excited utterances under Ohio Evid. R. 803(2). Under Ohio law, "the passage of time between

9

the [hearsay] statement and the event is relevant but not dispositive of the question" of whether a statement constitutes an excited utterance. *State v. Taylor*, 66 Ohio St. 3d 295, 303, 612 N.E.2d 316 (Ohio 1993). Further, there is no fixed lapse of time after which a statement can no longer be considered to be an excited utterance. *Id*. Instead, "the central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." *Id*. The Ohio Supreme Court also has observed that "each case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation." *Id*., *quoting State v. Duncan*, 53 Ohio St.2d 215, 219-220, 373 N.E.2d 1234 (Ohio 1978); *State v. Boston*, 46 Ohio St.3d 108, 117-118, 545 N.E.2d 1220 (Ohio 1989).

In the present case, one witness, a nurse from the Emergency Room ("ER"), testified to the following: she spoke to the victim immediately after the victim arrived at the hospital by ambulance; in response to queries as to the origins of her injuries, the victim stated that her boyfriend caused her injuries; and the victim repeated the substance of these allegations "over and over and over." (Tr. 145-47.) The facts of this case are similar to another case originating from the same state appellate district. *See State v. Justice*, 92 Ohio App.3d 740, 637 N.E.2d 85 (Ohio Ct. App. 1994). Therein, a victim of domestic violence drove herself to a police station, related the events of the assault to a police officer approximately one-half hour after the events occurred, and was asked questions by the officer.[1] *Id*. The state appellate court found that it

---

[1] The victim testified that about ten minutes elapsed from the time that she last saw the defendant until she began speaking with the police officer. *Justice*, 637 N.E.2d at 89.

10

was not error for the trial court to admit the out-of-court statement of the victim after the victim subsequently altered her testimony at trial. *Id*.  The court explained that neither the questioning of the officer nor the lapse of time destroyed the nervous excitement of the victim's faculties and her statement, therefore, qualified as an excited utterance. *Id*.; *see also City of Shaker Heights v. Al-Gureshi*, 1998 Ohio App. LEXIS 1627.

Similarly, the nurse's queries concerning the origins of the victim's injuries did not necessarily destroy the excited nature of the victim's responses.  The lapse of time from the point of injury, or the victim last seeing Bradford, until her arrival at the ER, though not clear from the record, was unlikely to have been considerable.  In addition, there is testimony that the victim was either unconscious or only semi-conscious until she reached the ER.  (Tr. 77, 166, 266.)  Given such a mental state, the lapse of time from the victim's perspective may have appeared to be minimal.  As such, it would not have been unreasonable for the trial court to find that the victim's statement to the nurse was an excited utterance and, therefore, admissible as substantive evidence.

Thus, trial counsel reasonably may have surmised that the victim's out-of-court statements would have been admitted even in the face of an objection.  Furthermore, while some of the victim's later statements to the police may have occurred too long after the event to constitute an excited utterance, it is hardly unreasonable for trial counsel, as a matter of strategy, to refrain from objecting to information that had already reached the jury's ears through the testimony of the medical witnesses.  Such tactics are commonly employed to avoid the appearance that the defense is trying to hide information from the jury or to avoid highlighting negative testimony.  Moreover, faced with the prospect that the victim's damaging out-of-court

statements would be admitted, defense counsel adopted a strategy that attempted to portray the victim's memory and perception as unreliable. (Tr. 299-304.) To further such a strategy, defense counsel elicited testimony that showed the victim tested positive for marijuana and cocaine on the same day she was admitted to the ER. (Tr. 129.) Defense counsel also elicited testimony that the victim was in the process of applying for disability due to bipolar schizophrenia, which she had been treated for in the past. (Tr. 102-03.) The victim testified that, although she was prescribed medications to treat her disorder, she was not taking them on the day the incident occurred. (Tr. 104.) Given trial counsel's knowledge of the entire body of evidence likely to be admitted, his failure to object was not an unreasonable strategy. In addition, because the out-of-court statements directly admitted through medical and law enforcement testimony were the same statements used to impeach the victim, trial counsel's failure to request an instruction limiting the statements for impeachment purposes was not so unreasonable as to constitute ineffective assistance of counsel.

Finally, Bradford contends that his counsel was ineffective for failing to object to the testimony of police officer Carey Jackson ("Jackson"). Specifically, Jackson's statement – that Bradford admitted he was a violent felon – merited an objection. (Doc. No. 13; Tr. 172.)

Bradford was charged as a repeat offender under the Ohio Domestic Violence statute, O.R.C. § 2919.25(A). (Doc. No. 9-2, Exh. 1.) A violation of this section ordinarily constitutes a misdemeanor of the first degree. *See* O.R.C. § 2919.25(D)(2). However, an accused may be convicted of a third degree felony "if the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or

12

household member at the time of the violations or offenses." *See* O.R.C. § 2919.25(D)(4). Consequently, the prosecution was required to prove the existence of two or more prior convictions as elements of the offense with which Bradford was charged.

Upon review of the transcript, it appears that the parties entered into a stipulation that this element of the crime was met. (Tr. 7-9.) In fact, defense counsel expressly raised Bradford's prior convictions for domestic violence and aggravated assault during *voir dire* in order to ascertain whether the jurors could come to a fair and impartial verdict despite such convictions. (Tr. 46.) During the jury instructions, the trial judge stated that evidence of Bradford's prior convictions was received solely for the purpose of proving an element of the offense and may *not* be considered to prove Bradford's character or propensity for bad acts. (Tr. 322-23.) Under these circumstances, trial counsel's failure to object was not unreasonable. Furthermore, Bradford was not prejudiced by this perceived omission, as the exclusion of the Jackson's brief statement would not reasonably have altered the outcome of the trial.

Bradford has failed to overcome the presumption that counsel rendered adequate assistance. Furthermore, the state appellate court's finding – that trial counsel's failure to object amounted to a reasonable exercise of trial strategy because counsel wanted to avoid highlighting negative testimony – was not an unreasonable application of clearly established federal law. For the foregoing reasons, Bradford's claim that his trial counsel was ineffective is without merit.

## IV. Conclusion

For the foregoing reasons, it is recommended that Bradford's Petition for a Writ of Habeas Corpus (Doc. No. 1) be DENIED.

s/ *Greg White*
U.S. Magistrate Judge

Date: May 27, 2008

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**